The record compel that. The petition's got a very stringent burden here. And our position is that although it's possible to look at it that way, that doesn't end the inquiry. The inquiry is does the record compel that under the Eli Zechariah standard, and we say that it doesn't. I understand the standard, but your argument would be stronger in this case if the original immigration judge who looked and deemed the petitioners credible and found in their favor, if he found the other way, that they weren't credible and in fact rejected them. But you basically have a split decision. Yeah. Q Mr. Furion, I want to ask an entirely different question. A Yes, Your Honor. Q In my looking through the record, I just can't find where the BIA ever addressed or decided the claim for, you know, a withholding of removal. They never ruled on that claim. You think they did? A Well, if the petitioner hadn't shown a called eligibility for asylum, it necessarily follows that they don't establish for withholding. And there's case law in the circuit. I believe it's Fonseca. I can't remember the name of the case. But that's a well-established principle that if a person cannot make a showing for asylum, then ipso facto, by law, they cannot show withholding. Q All right. If that's your position, then let me ask my follow-up question. And suppose we were to conclude that on the asylum claim, no substantial evidence supports the BIA's conclusion. All right? Then, necessarily, that reverses the withholding claim. Is that right? A I don't think so. Q I think the Board's decision on the withholding was based on its asylum decision. A Well. Q Do you agree with that? A I don't honestly know. Let me think about this for a second. If you reverse the BIA's decision on the withholding claim, then the Board's decision on the BIA's decision  Q Well, in the usual case, the Board or the IJ explicitly addresses both claims. Right? A Yes. Q Here, they were silent on the they addressed the CAT claim, but not the regular. I'll call it the regular withholding claim. So I don't know what to do in that state of the record and in light of Ventura, especially. Q Well, if the Court finds that the BIA hasn't addressed the withholding claim, if that's the Court's finding, then the Court would, under Ventura, have to remand. A On the other hand, you say necessarily or implicitly they ruled against it because the case law says that's what happens when you deny the withholding claim. I mean, the asylum claim. Q Yes. A But that doesn't seem to square with Ventura, does it? At least what we can do with it. Q Well, let me ask you this. If they establish, if we were to reverse and find that there was past persecution, then am I right that he is entitled to a presumption that he can use in his withholding claim that the government should then be given an opportunity to rebut? Is that the way it works? A Yes. Under the law, a finding of past persecution creates a presumption of a well-founded fear. Q Which carries over to the withholding part, right? A I believe so, yes. Q And then the government would have the chance before the BIA or the IJ to rebut the finding of or the presumption of a well-founded fear of future persecution? A Yes. That's the way it works. Q That stage was never addressed in this case. A Right. Q Is that right? In other words, you know, whether there's, whether the presumption has been rebutted, assuming there is one. A I don't think that that was addressed in this case. Q They never reached this case, meaning the agencies. A I don't think it was. Q Specifically addressed. Q But nonetheless, if you have one other practical question I'd like you to address, how do you deal with the apparently undisputed fact that police came looking for the petitioner after he put up the poster? In other words, the conclusion of the BIA seemed to be, well, the poster was unrelated, he has no reason to fear anything, but at least there was some evidence in the record that the police came looking for him after that event and he went into hiding. A I don't think that the record is clear that they were looking for him for that reason or the fact that he was being sought, again, in connection with his arrest. In other words, there's evidence in the record that he may have had to go back for a court appearance pursuant to that incident. Q Where's that in the record? A Excuse me? Q Where's the court appearance in the record? A I don't recall off the top of my head. We do cite it in our brief. Q Okay. A But we think that the record doesn't compel a conclusion that he has a well-founded fear either. For that reason, although he may fear that, we don't think that that fear is objectively reasonable. There's evidence in the record also that the torture is used in – I see I'm out of time. If I could just conclude my thought, thank you – that the torture is used in China, but we would submit that that evidence doesn't really pertain to this petitioner. Under that logic, anybody from China at all would be entitled to asylum in this case because there's nothing in this record that he would be subjected to torture if sent back there. I'm subject to your questions. Thank you. Q Okay, Mr. Fiorino. Thank you. Robado? Q Two quick points, Your Honor. The first instance when the petitioner hindered officials to arrest his aunt may not have been political according to what the government is claiming. But the case in Ramos-Vasquez, it does mention that if underlying law governing the prosecution is contrary to internationally accepted principles of human rights, such prosecution can be prosecution. In the first instance, he stopped them from arresting the petitioner. So he may, according to them, face prosecution. But the prosecution, the underlying law for the prosecution is he's opposing the government to force abortion, and that is definitely in violation of human rights that such prosecution can be prosecution, according to Ramos' case. And the second thing is, according to a matter of TMB, the State Department profile in absence of contradictory evidence is entitled to considerable deference. There are so many reports, and I specifically mentioned one that's on point, that the person who posted a poster was later on tortured. And these are all in the records. And none of that was referred to by the BIA. They mentioned that there was not enough evidence to show more likely than not the torture, that he would be subject to torture. So either for criminal prosecution for him, he's stopping the arrest, and the second one, he posts the poster. He is clearly being active to voice his opposition to the family planning policy, which they are enforcing as we speak. So in either situation, criminal prosecution, when he stopped the arrest, when he was trying to stop the arrest, which also pursued his voicing and his political opinion, and also after he actively stopped, posted the posters. And there were letters, there was a letter that indicated, again, that the officials are still looking for him. He was credible. There are a lot of evidence in records showing that there are tortures based on the same fact patterns. Therefore, Your Honor, the BIA did not address the issues correctly, and they just mentioned that there was not enough evidence to show more likely than not he will be subject to torture. Where there are cases on point that shows for the similar situation, they are subject to torture in China. And he was persecuted based on his political opinion. And in alternative, even for criminal prosecution, that is underlying the principle of human rights, and we know that the Chinese abortion policy is still going on, and it has been against human right. It's a human right violation to subject a person forcefully to undergo abortion and sterilization, and he was clearly against that policy. Okay. Thank you. Thank both counsel for the argument. This case is submitted for decision. Next case on the argument calendar is Carrera Ruiz versus Ashcroft. Good morning. Go ahead. Good morning, Your Honors.
judges: Tashima, Thomas, Silverman